IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| PRINCE KEYTON BURFORD,<br><br>      Petitioner,<br>v.<br><br>JAMES YATES, WARDEN,<br><br>      Respondent. | Case No. 2:06-CV-1297-MMS<br><br>ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS |

  Petitioner Prince Keyton Burford, a prisoner in state custody, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Burford is serving an indefinite prison term of twenty-five years to life for the fatal assault of Nicholas Quinteros, the eighteen-month-old child of Burford's live-in girlfriend at the time, Crystal Quinteros. In this federal habeas petition, filed May 17, 2006, Burford alleges that substantial evidence does not support the jury's verdict that he had "care or custody" of Nicholas within the meaning of California Penal Code Section 273ab, that the trial court erred in failing to instruct the jury on the legal definition of "care or custody," and that his motion for a new trial was inappropriately denied. To his petition, Burford attached an untitled document, which is analogous to a memorandum of points and authorities. On March 9,

2007, Respondents filed an answer to the petition, to which they attached a memorandum of points and authorities. Burford filed a traverse on December 19, 2008. In his traverse, Burford raised, for the first time in this federal habeas proceeding, a claim of ineffective assistance of counsel. For the reasons stated below, Burford's petition is **DENIED**.

## Factual and Procedural Background

On February 5, 2004, a jury convicted Burford of second-degree murder and fatal assault of a child. On April 26, 2004, Burford was sentenced to an indefinite term of twenty-five years to life for the fatal assault; the sentence for the second-degree murder conviction was stayed. On October 13, 2005, the California Court of Appeal affirmed the judgment in an unpublished opinion. The California Supreme Court denied review. In the course of affirming the judgment, the California Court of Appeal's opinion set forth the facts of this case, some of which are pertinent to this federal habeas petition and are, accordingly, reproduced below.

> Nicholas was born in December 2001 and died eighteen months later as a result of blunt force trauma to his abdomen. Nicholas's mother, Crystal, was 17 years old at the time of trial in January 2004. Crystal testified she met defendant sometime after Nicholas was born, and Nicholas and she began living with defendant at his mother's home in November 2002. By this time, Crystal was pregnant with defendant's child, who was born in February 2003. Crystal and the children slept in defendant's room. Crystal's mother gave her money to buy baby supplies, and defendant's mother paid for food for them. With the exception of a one-month period in May 2003 when Crystal lived with her mother and stayed weekends with defendant, Crystal and Nicholas lived with defendant until the time of Nicholas's death. . . .
>
> According to Crystal, defendant . . . physically abused Nicholas by punching him in the stomach or pulling his hair. On one occasion, defendant threw Nicholas across a room. Crystal testified defendant would not let her hold Nicholas after these incidents because "[h]e didn't like to see Nic[holas] around [her]." Crystal stated that she took Nicholas to the hospital twice previously for injuries inflicted by defendant. She lied to hospital staff regarding the cause of Nicholas's previous injuries because she was scared they would take Nicholas away from her and she did not want defendant to get in trouble. Crystal admitted spanking Nicholas and hitting him once with a closed fist on the leg. She also spanked her younger child. . . .

> According to Crystal, the day before Nicholas died, he had no bruising or breathing problems. When Crystal changed Nicholas's diaper at around 6:00 a.m. on the morning of his death, he did not appear to be in any distress. Crystal testified she awoke again at approximately 10:00 or 11:00 a.m. and saw defendant holding Nicholas by the neck and shaking him in a manner that "wasn't extremely violent[] but . . . wasn't gentle." Crystal asked defendant to stop, and defendant put Nicholas down. Crystal "tried to get [defendant] out of the room," but she did not check on Nicholas because she was scared defendant would get angry and start hitting her.
>
> Crystal and defendant went into the living room and watched television. After approximately 10 minutes, defendant got up and went down the hall toward the bedroom. After defendant was gone for two or three minutes, Crystal heard Nicholas cry. Crystal went to the bedroom and saw Nicholas lying on the floor and defendant leaning against the bed "doing something with his feet." Crystal asked defendant what was wrong with Nicholas, and defendant picked him up. Nicholas was limp. Crystal did not see any bruises on Nicholas at that time.
>
> Defendant and his brother tried to get Nicholas to stand up, without success. Defendant took Nicholas to the couch and tried to get him to drink some water, also without success. Crystal noticed several small bruises on Nicholas's stomach at that time. Defendant's brother went across the street and called 911.
>
> A neighbor whose bedroom window was within 15 feet of defendant's bedroom window testified that, on the day of the incident, he heard defendant say, "I'm a bad father and I think I killed him."

(alterations of quotations in original). The Court of Appeal also wrote, "It was defendant who picked Nicholas up and tried to get him to walk, then brought him to the couch and tried to give him some water. And, defendant put a T-shirt on Nicholas before paramedics arrived." The California court noted that "[a]n individual identifying himself as 'Burford' and matching defendant's general description told a paramedic at the scene that he was Nicholas's 'father.'"

The California Court of Appeal upheld Burford's conviction. The court concluded (1) that "the evidence was sufficient to support the jury's finding that Burford had the care or custody of Nicholas for purposes of section 273ab"; (2) that the trial court did not have a sua sponte duty to define the term "care or custody," especially considering that the defendant himself conceded to the trial

3

court that he "d[id]n't think anyone would reasonably argue that someone's stepson is not under their care and custody if they live in the same house" (alteration in original); and (3) that Burford was not entitled to a new trial due to the evidence that Crystal was physically abusive to her younger child, Princess. Burford raised additional claims before the California Court of Appeal, but they are not relevant to these federal proceedings.

In November of 2005, Burford petitioned for review in the California Supreme Court, raising the three principal issues discussed above. In December of 2005, the California Supreme Court summarily denied Burford's petition.

In July of 2004, while Burford's direct appeal was ongoing, Burford filed a petition for writ of habeas corpus in the Superior Court of California, San Joaquin County. In that petition, Burford alleged several ineffective assistance of counsel claims. Of particular importance to the current federal habeas petition is that Burford alleged that his trial counsel was ineffective for failing to have Burford declared incompetent to stand trial due to Burford's low I.Q. In September of 2004, the Superior Court denied Burford's habeas petition. The Superior Court determined that Burford's direct appeal was "still in its early stages," and that the issues that Burford raised in his habeas petition might be disposed of on direct review. The Superior Court accordingly denied the petition without prejudice pending the outcome of Burford's direct appeal. Burford, however, did not renew his state habeas petition. Nor did Burford petition the Superior Court's denial of his original state habeas petition to either the California Court of Appeal or the California Supreme Court.

Instead, in May of 2006, Burford filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of California. In his petition and supporting memorandum, Burford makes the same three arguments he

4

made in his petition to the California Supreme Court during the direct review process. First, he contends that substantial evidence does not support the jury's verdict that he had "care or custody" of Nicholas within the meaning of California Penal Code Section 273ab. Second, he alleges that the trial court erred in failing to instruct the jury sua sponte on the meaning of "care or custody." Third, he argues that his motion for a new trial was inappropriately denied. Burford also filed a traverse, which was untimely. He says that he did not receive a copy of the government's answer, and so his neglect is excusable. In his traverse, Burford, for the first time in this federal habeas proceeding, alleges an ineffective assistance of counsel claim, contending that because his I.Q. is in the low 40s, his lawyer was deficient in failing to request a competency hearing prior to trial and in failing to argue that Burford does not have the mental capacity to commit assault or murder.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to habeas corpus petitions filed after 1996. The instant petition, filed in May of 2006, is governed by AEDPA. In pertinent part, AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Where there is no reasoned decision from the state's highest court, this court "looks through" to the last reasoned state court decision. Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991). If that decision does not give a basis for its reasoning,

5

then this court must conduct an independent review of the record to determine whether the state court erred in its application of clearly established United States Supreme Court precedent. Delgado v. Lewis, 223 F.3d 976, 981 (9th Cir. 2000).

**Discussion**

**I. A reasonable jury could have found that Burford had "care or custody" of Nicholas.**

Burford first contends that the prosecution did not prove beyond a reasonable doubt that he was responsible for the "care or custody" of Nicholas. Therefore, he alleges that his conviction violates due process of law because he could not have been found guilty of every element of the crime fatal assault of a child.

California Penal Code Section 273ab provides as follows:

> Any person who, having the care or custody of a child who is under eight years of age, assaults the child by means of force that to a reasonable person would be likely to produce great bodily injury, resulting in the child's death, shall be punished by imprisonment in the state prison for 25 years to life.

Cal. Penal Code § 273ab. As is clear from the California statute, one element of the crime is that the person convicted must have "care or custody" of the child who died.

To the extent that Burford is alleging that the California Court of Appeal inappropriately defined the "care or custody" element of the California statute, that claim is not cognizable on this federal habeas petition. The California Court of Appeal canvassed the applicable case law and determined that the phrase has "no special significance beyond its plain meaning" and simply implies "a willingness to assume duties correspondent to the role of a caregiver" (citation omitted). This court cannot disturb the California Court of Appeal's holding regarding the interpretation of state law. The United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct

6

appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam).

If, however, Burford is claiming that no reasonable jury could have concluded, given the evidence at trial, that he had "care or custody" of Nicholas, that is a federal constitutional claim, and it is properly brought to the attention of a federal court in habeas review. See, e.g., Clark v. Arizona, 548 U.S. 735, 796-97 (2006). Nonetheless, this claim must fail as well.

The California Court of Appeal set forth facts from the trial showing that a reasonable jury could have concluded that Burford had "care or custody" of Nicholas. The California Court of Appeal noted that Nicholas lived with Burford from November of 2002 until his death in June of 2004, except for a one-month period, and that Burford used his social security income to pay rent for the room where they lived. That court emphasized that Burford assumed some parenting duties. For example, when Nicholas cried, Burford would yell at him, pick him up, and take him to his room. Burford played ball with Nicholas on at least one occasion. The California Court of Appeal also thought it important, and not unreasonably so, that during the incident culminating in Nicholas's death, Burford twice, and to two different people, referred to himself as Nicholas's "father." He also did the sorts of things that a father would do. For example, Burford put a t-shirt on Nicholas before the paramedics arrived.

Because Burford does not allege that the California Court of Appeal unreasonably determined the facts, and because these facts do establish that a reasonable jury could have determined that Burford had "care or custody."

**II. There is no clearly established United States Supreme Court precedent requiring a trial judge to give an instruction to the jury when both the prosecution and the defense agree that no instruction is necessary.**

Burford next argues that the trial court denied him due process of law when

7

it failed to instruct the jury sua sponte on the definition of "care or custody" in the California statute governing assault of a child.

In direct review of Burford's conviction, the California Court of Appeal determined that the phrase "care or custody" has "no special significance beyond its plain meaning." The state court's determination of what the applicable state statute means is conclusive in this proceeding. Bradshaw, 546 U.S. at 76. Moreover, as the California Court of Appeal found, Burford did not request an instruction on the meaning of "care or custody." In fact, before the trial court, Burford conceded that it was not reasonable to contend that he did not have care or custody of his live-in stepson.

There is no clearly established Supreme Court precedent that requires a trial judge to instruct the jury on terms that have a plain meaning; nor is there clearly established Supreme Court precedent that requires a trial court to give an instruction where the defendant has agreed that no instruction is required. See, e.g., Namet v. United States, 373 U.S. 179, 190 (1963). Burford's citations are not to the contrary. The Supreme Court cases he cites simply state that a jury must find a criminal defendant guilty of every element beyond a reasonable doubt and that a jury must be instructed on every element of the crime. None of the cases require a trial court to define words that have a plain meaning where the defendant has agreed that no instruction is required.

Accordingly, the California state court decision is not in violation of clearly established Supreme Court precedent, and Burford's habeas petition must be DENIED on this ground.

**III. There is no clearly established United States Supreme Court precedent requiring a state court to retry a defendant who claims new evidence may raise a reasonable doubt as to his guilt.**

Burford next argues that the California state courts denied him due process

8

by failing to grant his motion for a new trial based on newly discovered evidence pertaining to his girlfriend's physically abusive relationship with their infant daughter, Princess. According to Burford, Crystal calls Princess names, hits and throws her, and has even drawn her foot back as if to kick her. Burford alleges that this evidence may raise a reasonable doubt of his guilt in Nicholas's death.

Burford is not claiming he is factually innocent, but is instead claiming he has a constitutional right to a new trial to raise reasonable doubt regarding his guilt. Even claims of actual innocence are not generally cognizable on federal habeas review of state-court convictions. According to the Supreme Court, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993). Supreme Court precedent "makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Id. at 404.

Because Burford has failed to make out a case for an independent constitutional violation and Burford is not alleging actual innocence in any event, Burford's habeas petition must be DENIED on this ground.

**IV. Burford failed to allow the state courts to address his ineffective assistance of counsel claim, and he raised the issue in an untimely manner before this court.**

Burford's final argument, made for the first time before this court in his traverse, is that his trial attorney was ineffective because he did not request a competency exam for Burford. Burford alleges that, had he received the competency exam, he would have been found legally innocent because he did not have the mental capacity to commit assault or murder.

1        The right to effective assistance of counsel is clearly established in United States Supreme Court precedent. See Strickland v. Washington, 466 U.S. 668 (1985). Nonetheless, Burford's claim must fail for two interrelated reasons. First, Burford alleged ineffective assistance for the first time in these federal habeas proceedings in his traverse, not in his opening petition. Ninth Circuit precedent instructs that a "[t]raverse is not the proper pleading to raise additional grounds for relief." Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994). By itself, this failing might necessitate only supplemental briefing by the government to give the government an opportunity to respond to Burford's claims. Id.

       Second, Burford failed to exhaust this claim in the California state courts. Burford did raise several ineffective assistance claims in his 2004 state habeas petition. At that time, Burford's direct appeal was ongoing. Accordingly, the Superior Court of California for the County of San Joaquin dismissed Burford's state habeas petition without prejudice to refile after his direct appeal had concluded. Burford, however, did not renew his state habeas petition. Nor did he petition the California Court of Appeal or the California Supreme Court for review of the Superior Court's original denial. AEDPA requires state prisoners to exhaust their claims in state courts. Specifically, the applicable sections provide

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State . . . .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. §§ 2254(b)(1), (c). These sections require that state prisoners give state courts a fair opportunity to rule on the prisoners' claims. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). "[S]tate prisoners must give the state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Id. at 845. Because Burford did not give the California state courts a fair opportunity to rule on his ineffective assistance of counsel claims, he did not exhaust his state remedies, and his claim is, therefore, not now cognizable on federal habeas review. 28 U.S.C. §§ 2254(b)(1), (c); Woodford v. Ngo, 548 U.S. 81, 92 (2006).

Accordingly, Burford's petition is DENIED on this ground.

**Conclusion**

Burford has not shown that the California state courts have acted contrary to, or have unreasonably applied, clearly established United States Supreme Court precedent. Accordingly, Burford is not entitled to habeas relief from this court.

Petition **DENIED**.

DATED: March 27, 2009

/s/ *Mary M. Schroeder*
MARY M. SCHROEDER,
United States Circuit Judge
Sitting by designation